LEWIS, J.
ON MOTION FOR REHEARING AND CLARIFICATION.
We deny Appellees’ motion for rehearing, grant Appellees’ motion for clarification in part, and deny Appellees’ motion for clarification in part. For this reason, we withdraw our prior opinion and substitute the following in its place.
Cindy L. Sorel, n/k/a Cindy L. Ebner, (Appellant) appeals from a final judgment entered in accordance with a jury verdict in a negligence action that arose out of a rear-end collision. Appellant sued Troy Koonce and 'Comcast of Greater Florida/Georgia, Inc. (Appellees) based on the alleged negligence of Koonce in driving a van owned by Comcast. The evidence showed that Koonce was the rear driver in a rear-end collision between Comcast’s van and Appellant’s car. Appellant argues that the trial court erred in failing to direct a verdict against Appellees based on the legal presumption that Koonce, as the rear driver, was the sole proximate cause of the collision. We agree. Accordingly, we reverse and remand for entry of a directed verdict in favor of Appellant in accordance with the presumption of negligence and for a new trial on the remaining issues. This disposition renders the remaining issue on appeal moot.
In reviewing the propriety of the trial court’s ruling on Appellant’s motion for directed, verdict, we view the evidence in the light most favorable to Appellees as the nonmoving parties. See Hunter v. Ward, 812 So.2d 601, 602 (Fla. 1st DCA 2002). When the accident occurred, Appellant was riding in the passenger’s seat of her car, and her husband was driving. They were second in line at a traffic light, waiting for a green arrow. The Comcast van was directly behind them. When the green arrow appeared, all three vehicles began to move forward, preparing to turn left. As the vehicles were beginning to move forward, Koonce, the driver of the Comcast van, glanced down at the clock on his radio. When he looked back up, he saw that Appellant’s car had either stopped or was in the process of stopping. In response, he slammed on his brakes, but he was unable to avoid colliding with Appellant’s car. Shortly after the collision, after the cars had moved through the intersection, Koonce looked to his left and saw a vehicle traveling north.
Appellant, her husband, and her son testified that this vehicle had run the red light, causing Appellant’s husband to try to stop the car. A document from Koonce’s employee file at Comcast confirmed that another vehicle had run the red light and that this event contributed to causing the collision. Some of the testimony indicated that Appellant’s car had stopped when it was struck from behind, while other testimony suggested that it had not completed the stop before being hit.
After all of the testimony from the witnesses who were involved in the collision was entered into evidence, Appellant moved for a directed verdict on the issue of negligence, arguing that Appellees could not overcome the presumption of negligence that attaches to the rear driver in a rear-end collision. The trial court denied *1227 this motion, and the jury ultimately returned a complete defense verdict.[1] Thereafter, Appellant filed a motion for a new trial, arguing, among other things, that the trial court erred in failing to direct a verdict against Appellees on the issue of negligence.
We review the denial of a motion for directed verdict de novo. Harris v. Soha, 15 So.3d 767, 769 (Fla. 1st DCA 2009). Traditionally, a cause of action for negligence has been divided into four elements: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; (3) an injury to the plaintiff that was legally caused by the defendant’s breach; and (4) damages as a result of the injury.[2] Meyers v. City of Jacksonville, 754 So.2d 198, 202 (Fla. 1st DCA 2000) (quoting Paterson v. Deeb, 472 So.2d 1210, 1214 (Fla. 1st DCA 1985)). Although none of these elements alone is called “negligence,” case law has identified a rebuttable “presumption of negligence” in favor of the front driver in a rear-end collision. See Clampitt v. D.J. Spencer Sales, 786 So.2d 570, 574-76 (Fla.2001). This presumption “bears only upon the causal negligence of the rear driver,” and requires a directed verdict reflecting that the rear driver’s actions are the sole proximate cause of the collision and any injuries that result from the collision. See id. at 573-75.
To rebut the presumption of negligence, the rear driver must “come forward with evidence that ‘fairly and reasonably tends to show’ that the presumption of negligence is misplaced.” Id. (quoting Guile v. Boggs, 174 So.2d 26, 28-29 (Fla. 1965)). If the rear driver fails to do so, then a directed verdict should be entered in favor of the lead driver in accordance with the presumption. See Hunter v. Ward, 812 So.2d 601, 603-04 (Fla. 1st DCA 2002). Evidence that the lead driver made a sudden stop is not sufficient in itself to rebut the presumption. Clampitt, 786 So.2d at 575. However, evidence that the lead driver suddenly stopped “at a time and place where it could not reasonably be expected by the following driver,” is sufficient to rebut the presumption. Id. at 574 (quoting Pierce v. Progressive Am. Ins. Co., 582 So.2d 712, 714 (Fla. 5th DCA 1991)). Thus, the specific issue in this case is whether the evidence, viewed in the light most favorable to Appellees, shows that there was a question of fact as to whether Koonce should have reasonably expected Appellant’s stop.
Tocher v. Asmus, 743 So.2d 157, 158 (Fla. 3d DCA 1999), is quite similar to the instant case on this issue. In Tacher, the court affirmed the directed verdict in favor of the lead and middle drivers in a three-car collision at a busy intersection where the evidence showed that all three drivers began to move forward at a green light, the lead driver abruptly stopped, and the *1228 rear driver collided with the middle driver, causing the middle driver to hit the lead driver. 743 So.2d at 158. The Tacher court “concludefd] that a sudden stop by a preceding driver or drivers approaching or going through a busy intersection should be reasonably expected so as to impose a duty on the drivers which follow them to operate them vehicles at a safe distance.” 743 So.2d at 158. The Tacher court further explained its reasoning by noting that “[i]t is not at all unusual for vehicles preceding through busy intersections, for example, to have to suddenly brake for pedestrians, emergency vehicles or other drivers running a red traffic light from a cross-street.” Id.
The Florida Supreme Court distinguished Tacher in Eppler v. Tarmac America, Inc., 752 So.2d 592 (Fla.2000). In Eppler, the middle driver in a three-car collision sued the owner of the truck driven by the rear driver. Id. The middle driver testified that she was struck by the truck before she started moving forward at the traffic light. Id. In contrast, the rear driver testified that all the vehicles had begun to move and that the middle driver “suddenly — without warning and for no reason — slammed on her brakes.” Id. Based on these facts, the Florida Supreme Court held that the presumption of negligence on the part of the rear driver had been rebutted, as “an abrupt and arbitrary stop in such a situation is not reasonably expected” and is, “[i]n fact, ... a classic surprise.” Id. The Eppler court concluded that Tacher was distinguishable based on the testimony in Eppler that the stop was “for no reason.” 752 So.2d at 595. The Eppler court emphasized that “[a]brupt and arbitrary braking in bumper-to-bumper, accelerating traffic is an irresponsible and dangerous act that invites a collision” and that “[c]ases involving allegations of such an act are properly submitted to the jury.” Id. at 595-96.
Here, all of the testimony concerning the accident consistently showed that as Appellant’s car began to turn on a green arrow, another car ran the red light, causing the driver of Appellant’s car to either stop or slow down substantially. Thus, the stop or deceleration was not arbitrary or irresponsible as in Eppler; rather, it was an appropriate response to activity on the road, which Koonce should have reasonably expected. As noted in Tacher, it is not unusual for cars to stop abruptly at an intersection for a variety of reasons, including the fact that another vehicle has run a red light. 743 So.2d at 158. Although there was no evidence in the instant case that the intersection was particularly busy as in Tacher, there was specific evidence that another vehicle ran the red light. Based on these facts, we conclude the trial court should have directed a verdict for Appellant on the issue of negligence in accordance with Tacher and Clampitt v. D.J. Spencer Sales, 786 So.2d 570, 574-76 (Fla.2001), where the Florida Supreme Court recognized that the law requires all drivers to remain alert and to maintain a safe following distance when driving behind another vehicle.
Appellees argue that the testimony indicating that Appellant’s car merely slowed down as opposed to stopping created an issue of fact as to whether the driver properly activated the brake lights to give Koonce adequate notice of the stop. When Koonce testified about what he saw as the rear driver, he stated that after he glanced down at the radio, he looked up and saw that Appellant’s car was stopping, prompting him to slam on his brakes. Nothing in Koonce’s testimony or anyone else’s gives rise to a reasonable inference that the driver of Appellant’s car acted negligently with respect to the brake lights so as to relieve Appellees of the presumption. Based on the evidence, the driver of Appellant’s car either slowed down by releasing the accelerator or stopped by hitting *1229 the brakes. If the driver simply slowed down without activating his brake lights, then there was no sudden stop; if he applied his brakes, then there is nothing in the record to suggest that the lights did not activate. More importantly, under either scenario, Koonce’s testimony shows that he knew the driver of Appellant’s car was stopping as soon as he looked ahead after taking his eyes off the road to look at his radio. Therefore, Appellees have failed to point to any evidence that fairly and reasonably shows that the presumption of negligence is misplaced in this case. As a result, we reverse and remand for entry of a directed verdict in favor of Appellant in accordance with the presumption and for a new trial to determine whether and to what extent the collision was the proximate cause of Appellant’s injuries and what amount of damages, if any, should be awarded to Appellant.
REVERSED and REMANDED with instructions.
No additional motions for rehearing will be entertained. The Clerk is directed to issue the mandate forthwith.
KAHN and CLARK, JJ., concur.

. The jury answered "No” when asked on the verdict form whether there was "negligence on the part of Defendants, Comcast of Greater Florida/Georgia, Inc. and Troy C. Koonce, which was a legal cause of injury to Plaintiff, Cindy Sorel Ebner.”

. In some cases, the first two elements have been grouped together as "the issue of liability.” See, e.g., Westchester Exxon v. Valdes, 524 So.2d 452, 454 (Fla. 3d DCA 1988) (holding that "[t]he record here fails to establish the first two elements,” which the court identified as the duty of care and a breach of that duty, and, as a result, "a directed verdict ... on the issue of liability” was warranted). Similarly, the last two elements are sometimes stated as one. See, e.g., Beltran v. Rodriguez, 36 So.3d 725, 727 (Fla. 3d DCA 2010) (identifying three elements of negligence and identifying the third as requiring proof that “the plaintiff sustained damage that was proximately caused by the defendant's breach”); Valdes, 524 So.2d at 454.