PALMER, J.
 

 In this rear-end auto collision case, Dianna Douglas-Seibert appeals the trial court’s judgment entered after a jury returned a verdict in favor of rear-vehicle defendants Louis Riccucci and Tarmac America, LLC. The trial court erred in denying Douglas-Seibert’s motion for a directed verdict and, therefore, we reverse the judgment.
 

 Douglas-Seibert alleged negligence on the part of Riccucci and Tarmac, the driver and owner of a cement truck that rear-ended her vehicle. At trial, after the close of evidence, Douglas-Seibert moved for a directed verdict on the issue of Riccucci’s negligence, relying on the rebuttable pre
 
 *1088
 
 sumption of negligence by the rear driver in a rear-end collision. She also sought a directed verdict on her own lack of comparative negligence.
 

 The evidence, viewed in the light most favorable to Riccucci and Tarmac as the non-movants on the motion for directed verdict,
 
 [1]
 
 reveals the following. In late afternoon on a clear day, Douglas-Seibert was driving southbound on U.S. 1. In front of her was a sport utility vehicle (SUV). Behind her was the cement truck Riccucci was driving. The vehicles stopped at a traffic light. When the light turned green, the vehicles continued south, in the leftmost lane. Douglas-Seibert and Riccucci were driving about 40 to 45 miles per hour. Douglas-Seibert was one or two car lengths behind the SUV. Suddenly, a Ford Mustang pulled out of a right-hand side street, crossed the three southbound lanes of U.S. 1, cut in front of the SUV, and then turned northbound. The SUV braked and avoided colliding with the Mustang. Douglas-Seibert braked and avoided colliding with the SUV. As soon as the Mustang cleared the left lane, the SUV began to move forward, but Douglas-Seibert was still stopped when Riccucci rear-ended her car.
 

 The trial court denied the motion for a directed verdict as to Riccucci’s negligence but granted it as to Douglas-Seibert’s lack of negligence. The jury ultimately found Riccucci and Tarmac not liable, and the court entered judgment on the verdict.
 

 Douglas-Seibert argues that Riccucci failed to present evidence sufficient to rebut the presumption of negligence by the rear driver in a rear-end collision, and thus the trial court erred in denying her motion for a directed verdict on his negligence. We agree.
 

 We review
 
 de novo
 
 a trial court’s ruling on a motion for directed verdict.
 
 Andrews v. Direct Mail Express, Inc.,
 
 1 So.3d 1192, 1193 (Fla. 5th DCA 2009).
 

 In a rear-end collision, a presumption exists that the rear driver was negligent.
 
 Clampitt v. D.J. Spencer Sales,
 
 786 So.2d 570, 572-73 (Fla.2001). The rear driver can rebut this presumption by presenting evidence supporting a reasonable explanation of why he was not negligent.
 
 See id.
 
 at 573. Four types of explanations have been recognized: (1) a mechanical failure in the rear driver’s vehicle, (2) the lead driver’s sudden stop, (3) the lead driver’s sudden lane change, and (4) the lead driver’s illegal or improper stop.
 
 See Dep’t of Highway Safety & Motor Vehicles v. Saleme,
 
 963 So.2d 969, 972 (Fla. 3d DCA 2007);
 
 Alford v. Cool Cargo Carriers, Inc.,
 
 936 So.2d 646, 649-50 (Fla. 5th DCA 2006);
 
 Tozier v. Jarvis,
 
 469 So.2d 884, 886-87 (Fla. 4th DCA 1985). Here, Riccucci and Tarmac argue that the trial court’s denial of the motion for a directed verdict was proper because the evidence supported exceptions (2) and (4), sudden stop and illegal/improper stop.
 

 Regarding the sudden-stop exception, evidence of a “sudden stop, without more, is insufficient.”
 
 Clampitt,
 
 786 So.2d at 575. A rear driver must anticipate sudden stops by lead drivers. As the supreme court explained in
 
 Clampitt:
 

 Unfortunately, accidents on the roadway ahead are a routine hazard faced by the driving public. Such accidents are encountered far too frequently and are to be reasonably expected. Each driver is charged under the law with remaining alert and following the vehicle in front of him or her at a safe distance.
 

 In effect the law requires all drivers to push ahead of themselves an imagi
 
 *1089
 
 nary clear stopping distance or assured stopping space or adequate zone within which the driven vehicle can come to a stop....
 

 Lynch v. Tennyson,
 
 443 So.2d 1017, 1020-21 (Fla. 5th DCA 1983) (Cowart, J., dissenting). Each driver must be prepared to stop suddenly.... It is logical to charge the rear driver with this responsibility because he or she is the person who is in control of the following distance.
 

 Id.
 
 at 575-76 (footnote omitted).
 
 Cf. Pierce v. Progressive Am. Ins. Co.,
 
 582 So.2d 712, 714 (Fla. 5th DCA 1991)
 
 (en
 
 banc) (“[I]t is not a substantial and reasonable explanation by Pierce to merely say that the vehicles ahead of him ... stopped abruptly. Such stops had to be reasonably anticipated at the time and place where they occurred.... ”). Thus, for the sudden-stop exception to apply, the lead driver’s stop must occur “at a time and place where it could not reasonably be expected by the following driver.”
 
 Id.
 

 The facts in this case are not sufficient to support a finding that Douglas-Seibert’s stop was not reasonably antici-patable at the time and place where it occurred. In
 
 Tacher v. Asmus,
 
 743 So.2d 157 (Fla. 3d DCA 1999), the Third District noted:
 

 [A] sudden stop by a preceding driver or drivers approaching or going through a busy intersection should be reasonably expected so as to impose a duty on the drivers which follow them to operate their vehicles at a safe distance. It is not at all unusual for vehicles [proceeding] through busy intersections, for example, to have to suddenly brake for ... other drivers running a red traffic light from a cross-street.
 

 Id.
 
 at 158. Here, the situation is analogous because the Mustang darted out from a stop sign into the path of oncoming cross-traffic.
 
 [2]
 

 Alternatively, Riccucci and Tarmac argue that Douglas-Seibert was illegally or improperly stopped when she was hit. They reason that, although the SUV in front of Douglas-Seibert braked for the Mustang, the SUV continued on as soon as the Mustang cleared the lane and Douglas-Seibert should have immediately followed. Riccucci and Tarmac assert that Douglas-Seibert’s failure to move forward was an illegal or improper stop. We disagree.
 

 Under these facts, Douglas-Seibert was not illegally or improperly stopped. She reasonably stopped to avoid rear-ending the SUV. The fact that the SUV’s driver realized that he or she could safely continue on does not mean that Douglas-Seibert had a duty to follow within the time interval involved.
 

 Because the evidence presented by Ric-cucci and Tarmac was insufficient to rebut the presumption of negligence by the rear
 
 *1090
 
 driver in a rear-end collision, the trial court erred in denying Douglas-Seibert’s motion for directed verdict. Accordingly, we reverse and remand for entry of a directed verdict on the issue of Riccucci’s negligence and for a new trial on all remaining issues.
 

 REVERSED and REMANDED.
 

 SAWAYA, J., and WALLIS, F.R., Associate Judge, concur.
 

 [1]
 

 .
 
 See Tenny v. Allen,
 
 858 So.2d 1192, 1195 (Fla. 5th DCA 2003).
 

 [2]
 

 . Other analogous cases have also held the lead driver's stop reasonably anticipatable.
 
 See Clampitt,
 
 786 So.2d 570 (holding lead driver's stop on two-lane, 55-mph highway reasonably anticipatable where lead driver rear-ended a trailer that was being pulled off highway into driveway, and highway contained several nearby entrances/exits);
 
 Hunter v. Ward,
 
 812 So.2d 601 (Fla. 1st DCA 2002) (holding lead driver’s stop reasonably antici-patable where, from inside lane of four-lane divided highway, first driver attempted to turn left at median break, first driver’s truck hitch continued to protrude into inside lane, and lead driver braked to avoid hitch);
 
 Pierce,
 
 582 So.2d 712 (holding lead drivers’ stops reasonably anticipatable where, in crowded lane of traffic approaching busy intersection controlled by traffic light that was in view of rear driver, four vehicles were driving in a line, and first driver stopped for red light and was rear-ended by second driver, who was rear-ended by third driver, who was rear-ended by rear driver).